**S. Dean SLOUGH, Petitioner,**

v.

**FEDERAL TRADE COMMISSION,**
**Respondent.**

**No. 24463.**

United States Court of Appeals
Fifth Circuit.

June 24, 1968.

Fredric T. Suss, Washington, D. C. for petitioner.

J. B. Truly, Asst. Gen. Counsel, Gerald J. Thain, James McI. Henderson, Attys., F. T. C., Washington, D. C., for respondent.

Before JOHN R. BROWN, Chief Judge, WISDOM, Circuit Judge, and BREWSTER, District Judge.

JOHN R. BROWN, Chief Judge:

Petitioner Slough seeks review of a cease and desist order issued against him by the Federal Trade Commission which, after an administrative hearing, found that Petitioner had engaged in unfair and deceptive acts and practices in violation of 15 U.S.C.A. § 45(a) (1).[1] Finding that the Commission's order is supported by the record, we enforce.

Briefly stated, the facts show that Petitioner operates a collection service under the name "State Credit Control Board." This business assists businessmen in the collection of debts and past-due accounts by supplying them with forms for direct use of such purchasers designed to implant in the debtors' minds the notion that an official governmental

[1]. 15 U.S.C.A. § 45(a) (1) provides that: "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful."

agency is pressing them for payment. The Commission found that the wording of these forms would create a double false impression. The first was that the debt had been turned over to a third party for collection (when in fact it had not). The second was that such third party had some official governmental status. The Commission's order basically prohibited the use of any language that might imply that Petitioner was connected with a governmental agency, the prohibition of any "skip-tracing"[2] activities by Petitioner, and the prohibition of any representations that Petitioner will institute legal action if the debt is not paid.

■ Petitioner first contends that the public has insufficient interest in prohibiting these activities to justify the Commission's complaint and order. There is no merit to this contention, for that determination is essentially one for the Commission and will only be reversed on a showing of an abuse of discretion. See Guziak v. F. T. C., 8 Cir., 1966, 361 F.2d 700, cert. denied, 1967, 385 U.S. 1007, 87 S.Ct. 712, 17 L.Ed.2d 545; Exposition Press, Inc. v. F. T. C., 2 Cir., 1961, 295 F.2d 869; Ostler Candy Co. v. F. T. C., 10 Cir., 1939, 106 F.2d 962. No such showing has been made here.

■■ Petitioner next contends that the Commission's order denies him due process of law since its effect is to put him out of business. This argument is also without merit because the Commission obviously has the power to prevent deceptive practices even though the affected business could not successfully continue without the use of those practices. See Dandy Prods., Inc. v. F. T. C., 7 Cir., 1964, 332 F.2d 985, cert. denied, 1965, 379 U.S. 961, 85 S.Ct. 648, 13 L.Ed. 2d 555; Murray Space Shoe Corp. v. F. T. C., 2 Cir., 1962, 304 F.2d 270. The aim of the law is to stamp out unfair business practices and businesses which persist in practicing them.

■ Petitioner next contends that the Commission had no basis for determining that Petitioner had falsely represented that a request for payment from debtors had originated with someone other than the creditor since Petitioner himself was responsible for the physical mailing of the forms (on receipt of them from the "purchaser"), and thus technically the request for payment had indeed come from a third party. In fact, however, Petitioner had no authority to collect the debt but only mailed out the forms which were designed to imply that the debt had been turned over to and was now in the hands of the transmitting third party for collection. The Commission found that this lack of authority made the letters "wholly grounded in deception." We think this determination was readily supported, Carter Prods., Inc. v. F. T. C., 5 Cir., 1963, 323 F.2d 523, 528; Kalwajtys v. F. T. C., 7 Cir., 1956, 237 F.2d 654, 65 A.L.R.2d 220, cert. denied, 1957, 352 U.S. 1025, 77 S.Ct. 591, 1 L.Ed.2d 597, for it is obvious that the impression conveyed to the debtor is quite different from the actual state of affairs.

■■ Petitioner's last assault on the Commission's findings and order is on the part of the order prohibiting the Petitioner from engaging in "skip-tracing" and stating that legal action for collection is forthcoming unless prompt payment is made. Although Petitioner admittedly has never engaged in skip-tracing in the past, this practice is intimately connected with the debt collection business, and it is not for us to displace the Commission's proposed remedy unless it "has no reasonable relation to the unlawful practices found to exist." F. T. C. v. Colgate-Palmolive Co., 1965, 380 U.S. 374, 394–395, 85 S.Ct. 1035, 1048, 13 L. Ed.2d 904, 919–920. As to the prohibition against falsely threatening legal action, the fault with Petitioner's position is his own readily-made admission that the entire collection scheme is designed to collect without the necessity of legal action, and therein lies the deception.

**2.** Skip-tracing is the collection-agency practice of tracking down debtors whose whereabouts have become unknown.

Moreover, the Commission's order provides that a good faith intent to institute legal action will constitute a defense to any charge that the order has been violated.

Enforced.