**ALL–STATE INDUSTRIES OF NORTH CAROLINA, INC., ABC Storm Window Co., Inc., All-State Industries of Tennessee, Inc., All-State Industries, Inc., and All-State Industries of Illinois, Inc., corporations, and William B. Starr, individually and as an officer of said corporations, Petitioners,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

**No. 13568.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 6, 1970.

Decided March 19, 1970.

Jacob A. Stein, Washington, D. C. (Joseph J. Lyman, Washington, D. C., on the brief) for petitioners.

Robert E. Duncan, Atty., Federal Trade Commission (John V. Buffington, Gen. Counsel, J. B. Truly, Assistant Gen. Counsel, and Alvin L. Berman, Atty., Federal Trade Commission on the brief) for respondent.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BRYAN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

The Federal Trade Commission on June 19, 1967 complained in due form of unfair and deceptive acts and practices by All-State Industries of North Carolina, its four affiliates and principal executive officer (All-State). Federal Trade Commission Act, section 5(b), 15 U.S.C. § 45(b). Upon the accused's responsive denial of the charges and after a plenary administrative hearing, the Commission declared the complaint justified and ordered desistance and cessation of the imposture. Respondents appeal, but we perceive no infirmity in the order.

■ I. At the start, respondents moved to disqualify the Commission on the grounds that prior to the initiation of this proceeding, its Chairman had written the United States Senate Committee on Commerce decrying the prevalence of practices in national trade paralleling those of All-State. The respondents branded the communication a prejudgment of their cause, obliging the Commissioners to recuse themselves.

■ The argument is superficial. The Commission was performing its overriding duty under the Act—to investigate appearances and apprehensions of activities hurtful to the economy of the country. It was incumbent upon this body to speak out, as it did, upon commercial behavior thought to be of overtopping importance because of its apparently deceiving character and potential expansion. FTC v. Cinderella Career and Finishing Schools, Inc., 131 U.S.App.D.C. 331, 404 F.2d 1308, 1313–1314 (1968). Cf. Lehigh Portland Cement Co. v. FTC, 291 F.Supp. 628 (ED Va.1968, Lewis, J.), aff'd per curiam, 416 F.2d 971 (4 Cir. 1969).

■ II. The respondent companies engage in the interstate sale and installation of residential aluminum siding, storm windows, doors, and appurtenant fixtures. From the Hearing Examiner's findings of fact, the following account unfolds of how they vend their products. These are of two grades. The "ADV" is the cheaper. It is extensively advertised, primarily through mail-outs to people whose names and addresses are culled from telephone directories. "PRO", the other grade, is of a higher quality and not so widely publicized.

Respondents' sales technique, or "pitch", is devised to create, first, a demand for the "ADV" product. Through inflated promotion it is presented as a "special offer" with "limited time" prices. But the Examiner found the "ADV" is actually priced uniformly and without time limit. He held as untrue All-State's claim that they deal directly from their factory with the output "100% guaranteed".

Inquiries or "leads" are answered by a supposed "sales manager". He attempts to pressure the prospect into signing a contract, a note and a deed, committing him to the purchase of

"ADV" articles but leaving blank the monetary obligation. As soon as the contract is executed, the salesperson brings out a sample of the "ADV" and points out deficiencies in it, "whether real or imaginary". The "PRO" is then shown in contrast, to the detriment of the "ADV". Whenever possible the "PRO" is then sold "at the highest price obtainable from the individual customer". The salesmen have incentives to substitute the "PRO"—they receive no commission on "ADV" but only on "PRO" sales.

This "bait and switch" artifice, the Examiner discovered, was fully set forth in the sales force's training manual and was employed generally. He also reported that All-State's agents utilized "gimmicks whereby the original prices quoted for respondents' products can be reduced." For example, the representative would promise a potential buyer a special discount, even below the quoted sale price, if the latter would allow the use of his home for demonstration or display purposes. Rarely, however, would a patron's home be so utilized. It was found as a bare inducement to overcome "sales resistance at a higher price" and provide "some apparently reasonable basis for the reduction in price."

These findings of the Examiner were embraced by the Commission as securely rooted in the evidence. Clearly they sustain the complaint.

III. The Commission's final order contained thirteen "cease and desist" directives against continuance of the practices inveighed against by the Examiner. This suit attacks these mandates as too broad, too general and vague. Appellants' criticisms are untenable. The Commission's precepts are unequivocally phrased and necessary inhibitions upon the appellants' future pursuit of business.

The only directive warranting further discussion is No. 13. Refused by the Examiner, but added by the Commission, it requires the respondents to refrain from:

"13. Failing to disclose orally prior to the time of sale, and in writing on any conditional sales contract, promissory note or other instrument of indebtedness executed by a purchaser, and with such conspicuousness and clarity as is likely to be observed and read by such purchaser, that:

"Any such instrument, at respondents' option and without notice to the purchaser, may be discounted, negotiated or assigned to a finance company or other third party to whom the purchaser will thereafter be indebted and against whom the purchaser's claims or defenses may not be available."

This prescript is best explained in the words of the Commission's opinion:

"We hold that the examiner erred in dismissing this charge of the complaint. Our holding is based upon two grounds discussed in detail below: first, that failure to disclose to prospective purchasers that notes of indebtedness executed in connection with a retail sale may be assigned to third parties to whom the purchaser's claims or defenses on the contract may not be available is inherently unfair where, as here, the seller routinely assigns such instruments to third parties; and second, that such failure to disclose is deceptive in view of facts officially noticed by the Commission."

This directive is sustained. Factually, it rests on the Commission's quite sound anticipation that All-State's deceptions would engender customers' complaints generally. Warrantably, it foresaw purchasers soon seeking to recoup their losses through set-offs or counterclaims against the obligations they had delivered to All-State. Possibility of their success would, of course, be foiled or obstructed by negotiation of the obligations. Despite its severity the Commission thought the directive was a needed public precaution.

This determination was peculiarly justifiable here because of the nature and prevalence of All-State's deceptions. It was within the Commission's domain and

cannot be said to be unsupported in the record. Cf. Section 5(c) of the Federal Trade Commission Act, 15 U.S.C. § 45(c).

The order on appeal will be enforced against all of the respondents, individual as well as corporate.

Affirmed.