ARTHUR MURRAY STUDIO OF WASH-
INGTON, INC., et al., Petitioners,

v.

FEDERAL TRADE COMMISSION,
Respondent.

No. 71–1807.

United States Court of Appeals,
Fifth Circuit.

March 21, 1972.

Rehearing and Rehearing En Banc
Denied May 11, 1972.

Tom M. Schaumberg, Washington, D. C., for petitioners; Gadsby & Hannah, Washington, D. C., of counsel.

Joseph Martin, Jr., Ronald M. Dietrich, Gen. Counsels, Harold D. Rhynedance, Jr., Asst. Gen. Counsel, Robert E. Duncan, Thomas F. Howder, Federal Trade Commission, Washington, D. C., for respondent.

Before BELL, DYER and CLARK, Circuit Judges.

BELL, Circuit Judge:

This is a petition to review and set aside a cease and desist order of the Federal Trade Commission entered against four Arthur Murray dance studio corporations and two individuals who were officers of each of the corporations. The primary issue before this court is whether the Federal Trade Commission may properly prohibit these dance studio petitioners from entering into contracts for dance instruction in an amount in excess of $1,500. A second issue is whether it was error for the hearing examiner to reopen the record for reception of evidence on the $1,500 limitation after the parties agreed that it be closed and the issues determined on their stipulations of fact. The petition will be denied and the order enforced.

The complaint in this matter was issued by the Commission on April 3, 1969, charging the petitioners with unfair methods of competition in commerce and deceptive acts and practices in commerce in violation of § 5 of the Federal Trade Commission Act, 15 U.S.C.A., § 45.[1] More specifically, petitioners were charged with various misleading and deceptive acts intended to induce unwary members of the public into entering dance lesson contracts at exorbitant prices. Attached to the complaint was a proposed order which, *inter alia*, would prohibit petitioners from entering into contracts which would obligate any individual to pay a total amount which exceeds $1,500 at any one time. (The only portion of this order in dispute is the monetary limitation.)

The petitioners answered, denying any illegality, and thereafter entered into a proposed settlement agreement with Commission counsel. Under the proposed settlement, the limit on indebtedness was raised to $4,000. However, the Commission rejected this provision, indicating that any acceptable consent order would require the $1,500 limitation.

Stipulations of fact were entered and the record closed to the reception of evidence, subject however, "to a motion by complaint counsel if they so wish to reopen the record on good cause shown for the introduction of further evidence." Shortly thereafter, and over objection of petitioners, the record was reopened for the reception of evidence on the $1,500 limitation. Hearings were then held,

---

1. In pertinent part:

§ 5(a) (1) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful.

§ 5(a) (6) The Commission is hereby empowered and directed to prevent persons, partnerships, or corporations . . . from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce.

§ 5(b) Whenever the Commission shall have reason to believe that any such person, partnership, or corporation has been or is using any unfair method of competition or unfair or deceptive act or practice in commerce, and if it shall appear to the Commission that a proceeding by it in respect thereof would be to the interest of the public, it shall issue and serve upon such person, partnership, or corporation a complaint stating its charges in that respect. . . . If upon such hearing the Commission shall be of the opinion that the method of competition or the act or practice in question is prohibited by this Act, it . . . shall issue . . . an order . . . to cease and desist . . . See Federal Trade Commission v. Sperry and Hutchinson Co., 1972, 405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170.

and the hearing examiner found that the charges against petitioners had been sustained. The examiner's cease and desist order incorporated the $1,500 limitation and his order was affirmed on appeal to the Commission.

## I.

Petitioners' contention that it was error to reopen the record for the introduction of evidence on the $1,500 limitation is without merit for at least two reasons. First, as stated, the record was closed subject to a motion by Commission counsel to reopen it on good cause shown for the introduction of further evidence. This order was well within the authority of the hearing examiner under the Commission rules, 16 C.F.R. § 3.51(d), which vests in the hearing examiner the authority in his discretion to reopen the record for the reception of evidence at any time prior to filing his initial decision. Here the examiner added "the good cause shown" requirement which was otherwise not necessary. The good cause shown was sufficient. It was the need for a record centering on the unconscionable activities of petitioners in their trade practices which might indicate the propriety of the monetary limitation to protect the public. Second, there is no showing of prejudice to petitioners by the reopening of the record. In order to make out a case of denial of procedural due process, there must be a showing of substantial prejudice. Cf. Pacific Molasses Co. v. Federal Trade Commission, 5 Cir., 1966, 356 F.2d 386.

We therefore hold that there was no error in reopening the record for the introduction of evidence on the $1,500 limitation.

## II.

The more difficult question is presented by the argument that it was improper to limit petitioners' contracts with individual dance students to an amount not exceeding $1,500 at any one time. Basically, they argue that this aspect of the remedy does not have a reasonable relationship to the unlawful practices found to exist and thus fails to meet the standard established by Federal Trade Commission v. National Lead Company, 1957, 352 U.S. 419, 77 S.Ct. 502, 1 L. Ed.2d 438. See also Jacob Siegal Company v. Federal Trade Commission, 1946, 327 U.S. 608, 613, 66 S.Ct. 758, 90 L.Ed. 888.

Our determination of the question presented must be made in light of the authority of the Commission to eliminate unfair methods of competition and unfair or deceptive acts or practices, as this authority has been construed by the Supreme Court. No better statement on the subject can be found than that of Justice Clark, speaking for an unanimous court, in Federal Trade Commission v. National Lead Company, supra:

"The Court has held that the Commission is clothed with wide discretion in determining the type of order that is necessary to bring an end to the unfair practices found to exist. In Jacob Siegal Co. v. Federal Trade Com., 327 U.S. 608, 66 S.Ct. 758, 90 L.Ed. 888 (1946), the Court named the Commission 'the expert body to determine what remedy is necessary to eliminate the unfair or deceptive trade practices which have been disclosed. It has wide latitude for judgment and the courts will not interfere except where the remedy selected has no reasonable relation to the unlawful practices found to exist.' Id. 327 U.S. at [pages] 612–613, [66 S.Ct. at page 760]. . . . Again, in Federal Trade Com. v. Ruberoid Co., supra, 343 U.S. at [page] 473 [72 S.Ct. at page 803], we said that 'if the Commission is to attain the objectives Congress envisioned, it cannot be required to confine its road block to the narrow lane the transgressor has traveled; it must be allowed effectively to close all roads to the prohibited goal, so that its order may not be by-passed with impunity.' We pointed out there that Congress had placed the primary responsibility for fashioning orders

upon the Commission." 352 U.S. at 428–429, 77 S.Ct. at 509.

■ And, as is also stated in *National Lead,* the Commission has the authority to restrict otherwise lawful practices and activities when they are likely to be used to carry out an unlawful purpose. 352 U.S. at 430, 77 S.Ct. 502. On § 5 cases involving fact posture, see also Jacob Siegal Company, supra; S & S Pharmaceutical Company v. Federal Trade Commission, 5 Cir., 1969, 408 F. 2d 487; Slough v. Federal Trade Commission, 5 Cir., 1968, 396 F.2d 870; All-State Industries of North Carolina, Inc. v. Federal Trade Commission, 4 Cir., 1970, 423 F.2d 423.

■ The right of petitioners to contract must be accommodated by the Commission if at all possible with its statutory duty to formulate a remedy to eliminate unfair and deceptive trade practices, once such practices have been found. *Jacob Siegal Company,* supra, teaches this principle in the context of protecting an asset consisting of a trade name. Moreover, the remedy should be no broader in restricting legitimate acts than is reasonably necessary under the circumstances obtaining. See Cotherman v. Federal Trade Commission, 5 Cir., 1969, 417 F.2d 587, where we found the order overbroad to the extent that petitioners were prohibiting from actually lending money on lawful representations.

■ Turning to the facts underlying the $1,500 limitation here, we find an abundance of evidence showing a multitude of transactions where customers of petitioners were overreached in executing contracts. One example was seven contracts totalling $17,820, made in a period of twelve months by a 69 year old widow. Examples of other totals for dance lessons, trips, club memberships, parties and the like, extracted from various individuals, were in ranges from $4,300 to $13,000. Many attempted without success to withdraw from the contracts.

The charge against petitioners out of which the $1,500 limitation arose was that petitioners' contracts were the product of intense, emotional and unrelenting sales pressure. The evidence more than supports this charge. The record is replete with trick advertisements to draw prospects, sham dancing analysis tests, relay salesmanship, some under secret electronic supervision by management, promises of social status and companionship, psychological sales techniques based on past unpleasant experiences (described as X-Factor or "past is black" technique). In many instances these tactics added up to cajolery and coercion. Many were reduced to tears. One woman begged from her knees to be allowed to contract. Another woman testified:

"The constant battering, it never let up. Two weeks at a time was about all they would let you go without being approached for some little additional something, not a big one, the big ones were about every two months and the little ones were about every two weeks. I was a nervous wreck there most of the time."

It was commonplace for contracts to be outstanding for several hundred hours of lessons which would take several years to complete. In one case, an elderly woman was signed up over a period of slightly more than a year for 696 hours of lessons. One of her contracts was in excess of $6,000. Many of the customers were placed in financial straits due to the contracts. The sales pitch for more contracts was based on the different levels of accomplishment offered—bronze, silver, gold, gold star and gold bar are illustrative. In addition, there were clubs to be joined by invitation and trips to be taken.

It can be said for petitioners that they offered activities and companionship for the lonely and the socially insecure. Some customers testified that they were completely satisfied. We can infer that many others were satisfied.

Petitioners contend that the no monetary limitation was necessary, given the fines which could be imposed under the Act for violations of the order. 15 U.S. C.A., § 45(*l*). They also urge that other provisions of the order, such as the seven day cooling off period—i. e., the contract may be cancelled within seven days, render the monetary limitation unnecessary. An alternative approach would be to report all contracts in excess of $1,500 to the Commission. The Commission could then check for violations of its order. We find no merit in these suggestions.

The record makes out a case that a contractual limitation was indicated and that the limitation selected by the Commission bore a reasonable relationship to the unfair and deceptive practices found. It is clear from the record that the $1,500 line of demarcation was reasonable from the standpoint of alleviating the practices in question. This limitation is adjusted to the prices usually charged by petitioners and other dance studios for the number of lessons ordinarily needed to reach a basic stage of accomplishment.[2]

We cannot say that the limitation is overbroad in amount, or unnecessary because of the other provisions in the order, or because petitioners are subject to fines for violations of the order. Nor can we say that the rights of petitioners to contract have been improperly accommodated.

The petition to review and set aside the cease and desist order of the Commission is denied, and the order will, pursuant to statute, be enforced. 15 U. S.C.A., § 21(c).

Enforcement ordered.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM.

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

---

2. On the other hand, the California and Illinois legislatures have set a limitation on such dance contracts of $2,500.