827 F.2d 769
 1987 O.S.H.D. (CCH) P 28,035
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lonnie JONES, Petitioner,
v.
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION; D & R
Contractors, Respondents.
 No. 86-3759
 United States Court of Appeals, Sixth Circuit.
 August 27, 1987.
 
 1
 Before KEITH and ALAN E. NORRIS, Circuit Judges, and GIBBONS*, District Judge.
 
 
 2
 KEITH Circuit Judge.
 
 
 3
 This case involves a complaint of discrimination filed by petitioner Lonnie Jones ('Jones') pursuant to the Federal Mine Safety and Health Act of 1977 ('Act'), 30 U.S.C. Sec. 801 et. seq. (1982). In his decision on the merits the Administrative Law Judge ('ALJ') held that petitioner had been discharged by D & R Contractors ('D & R') in violation of Section 105(c)(1) of the Act. The Federal Mine Safety and Health Review Commission ('Commission') granted D & R's petition for discretionary review and reversed the ALJ's decision. For the reasons set forth below, we reverse the Commission's decision and reinstate the decision of the ALJ.
 
 
 4
 On May 10, 1983, Jones filed his initial discrimination complaint with the Department of Labor's Mine Safety and Health Administration ('MSHA'). The complaint was filed against D & R and Ronald Perkins, foreman of Mingo Coal Company ('Mingo'). After investigating the complaint, MSHA determined that a violation of the Act had not occurred. Jones was advised of the results. He was further advised that if he wished to pursue his claim, he had a right to file a discrimination complaint with the Commission within 30 days of notice of MSHA's determination.
 
 
 5
 On June 27, 1983, Jones timely filed his complaint with the Commission, naming Mingo as the sole respondent. The complaint was served on Roger Daniel, owner and operator of Mingo.
 
 
 6
 On August 18, 1983, Mingo filed an answer and a motion for dismissal or summary judgment. In addition to asserting that Jones had never been in its employ, Mingo alleged that Jones had been an employee or partner of D & R, an independent contractor that operated the mine owned by Mingo. Based on this allegation, Mingo argued that D & R was an indispensable party to the action.
 
 
 7
 On August 22, 1983, Jones filed a motion to join D & R as a party-respondent. In turn, Mingo opposed Jones' motion on the ground that joinder of D & R was untimely. Subsequently, the presiding ALJ issued an order provisionally joining D & R as a party 'for purposes of hearings on all pending motions.' The ALJ's order stated that all pending motions would be entertained at the start of the hearing, and that a hearing on the merits would follow, if it were deemed necessary.
 
 
 8
 The ALJ's order also directed Jones to serve D & R with a copy of the discrimination complaint. Jones' complaint was served on D & R on October 25, 1983, and D & R filed its answer on November 17, 1983. Among other things, D & R's answer alleged that Jones was not employed by D & R, but rather was a joint venturer or partner of D & R. D & R further asserted that Jones' complaint against D & R should be dismissed because it was time-barred by Section 105(c)(3) of the Mine Act, which provides that a miner's complaint is to be filed within 30 days of notification that the Secretary of Labor will not prosecute a complaint on the miner's behalf.
 
 
 9
 The hearing on this matter was held on February 7-8, 1984. Attorneys entered appearances for Jones, Mingo and D & R. At the start of the hearing, the ALJ heard arguments on Jones' motion to join D & R as a party. Jones' attorney explained that the motion to join was made because of Mingo's allegations that D & R was an indispensable party. The attorney further argued that the remedy was not to dismiss the case, but to allow for the joinder of D & R. However, in response to questions by the ALJ, Jones' attorney stated his legal position that Jones was totally an employee of Mingo and not an employee or partner of D & R. He further stated that Jones' position was that no evidence existed that he was an employee or partner of D & R. Mingo asserted that its defense to Jones' charge was that Jones was an employee and/or partner of D & R and that Mingo was not responsible for his discharge. After inquiring of the parties whether there were any objections to the dismissal of D & R and receiving negative responses from the attorneys for both Jones and Mingo, the ALJ dismissed D & R. Because Ronald Perkins, D & R's foreman and a partner of D & R, was subpoenaed as a witness, he remained, but was sequestered along with the other witnesses. D & R's counsel also remained, although he did not participate in the hearing.
 
 
 10
 Jones then presented his case on the merits. In part, he testified about his employment relationship with Mingo and its owner, Roger Daniel. At the close of Jones' case, Mingo asserted that Jones had failed to prove his case and moved for summary judgment and a directed verdict. The ALJ decided to consider the motions overnight.
 
 
 11
 At the start of the second day of the hearing, on February 8, 1984, the ALJ denied both of Mingo's motions. The ALJ opined that if there was to be any finding of discrimination, 'the only person chargeable or the only entity chargeably with that would be D & R Contractors and/or Ronald Perkins.' Joint Appendix at 11. The ALJ then asked Jones' counsel whether he had any objections to the rejoining of D & R as a party. Jones' counsel had no objection.
 
 
 12
 Admitting that D & R's joinder was rather unusual after Jones' case-in-chief had been completed, the ALJ noted that D & R's counsel had been present throughout the previous day's proceedings. D & R, however, objected to being rejoined. It argued that the discrimination complaint against it, which had been effected by Jones' August 22, 1983, joinder motion, was time-barred by the relevant 30-day time limit in Section 105(c)(3) of the Act. Following a discussion off the record, the ALJ agreed with D & R's period of limitations argument. The ALJ based his determination, however, on his mistaken belief that Jones had filed his joinder motion in August, 1984 (rather than in 1983). Finding that Jones had not moved to join D & R until well beyond the applicable 30-day filing period in Section 105(c)(3) of the Act, the ALJ concluded, '[T]hat [ruling] I previously made that [D & R is] no longer a party to this proceeding would stand.' Joint Appendix at 12.
 
 
 13
 Mingo renewed its motion to dismiss Jones' complaint for failure to join an indispensable party. The ALJ determined that there was sufficient evidence to proceed against Mingo and denied the motion. Mingo proceeded with its defense. The only witnesses presented by Mingo were Daniel and Perkins. Although D & R's counsel was present, he took no part in their examination or cross-examination. After the testimony of these two witnesses, Mingo rested its case and the ALJ took the case under advisement.
 
 
 14
 Two weeks after the conclusion of the hearing, on February 22, 1984, the ALJ arranged a conference call with attorneys for Jones, Mingo and D & R. Although there is no transcript or minute of this conversation, it is clear that the ALJ arranged the call because he had recognized the computational mistake that he had made in ruling on the period of limitations defense raised by D & R. It appears that during the call the ALJ informed the parties that his decision not to join D & R on February 8, 1984, was based on his miscalculation of the time that had elapsed from the date of the Secretary's non-prosecution letter to Jones and the date of Jones' subsequent motion to join D & R. Using the correct date of Jones' joinder motion, August 22, 1983, the ALJ determined that Jones' filing delay was excusable. He told the parties of his intent to rejoin D & R and, according to his written decision in this matter, offered D & R the 'opportunity to present aditional evidence and/or to cross examine witnesses'. Joint Appendix at 28.
 
 
 15
 D & R appears to have objected to its joinder on two grounds: that it had been dismissed on the first day of the hearing--with Jones' consent--and, therefore, had not had the opportunity of participating in the hearing process; and, again, that Jones' motion for joinder was time-barred. D & R followed up its oral objection with a written statement of its objections and a letter informing the ALJ that D & R was not going to submit any additional evidence. In its objections, D & R repeated that it had been dismissed with Jones' consent and had not participated in the hearing. On March 7, 1984, the ALJ joined D & R and then severed the case involving D & R from Jones' action against Mingo. Subsequently, D & R was permitted to and did file a brief on the merits of this case.
 
 
 16
 In his decision on the merits, the ALJ focused most of his attention on D & R's timeliness argument and the evidence concerning Jones' discharge. The ALJ rejected D & R's due process objections to its joinder after the hearing. In a footnote generally describing the February 22, 1984 conference call, the ALJ noted that D & R was given the 'opportunity to present additional evidence and cross-examine witnesses'. Joint Appendix at 28. The ALJ also noted that D & R's counsel 'was present throughout the hearings and that D & R . . . [had] waived the opportunity to present additional evidence and/or to cross-examine witnesses'. Joint Appendix at 28. The ALJ concluded that Jones' discharge was in violation of Section 105(c)(1) of the Act. In his subsequent remedial order, the ALJ directed D & R and Ronald Perkins to pay Jones back wages with interest, plus cost and attorneys' fees.
 
 
 17
 On appeal, the Commission reversed the ALJ's ruling. The Commission noted that D & R was improperly joined as a party to the action. The Commission concluded that the joinder 'effectively denied the operator an adequate opportunity to defend against the claim of unlawful, discriminatory discharge . . . thereby depriving D & R of due process of law'. Joint Appendix at 13.
 
 
 18
 On appeal, Jones argues that the Commission's reversal on procedural grounds was not in accordance with the law. He argues that the available administrative procedures provided to D & R satisfied the 14th amendment's due process requirement. He further argues that any procedures rejected by D & R were voluntarily waived, and thus, D & R can demonstrate no prejudice concerning the procedures used or offered. We agree with the argument advanced by Jones.
 
 
 19
 'The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner". Matthews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). In determining whether D & R was afforded this opportunity, it is important to note that we are dealing with administrative proceedings provided by Congress to determine civil liability under an important remedial section of a safety and health statute. Such proceedings must, of course, be conducted in accordance with due process. However, due process does not require that 'administrative hearings . . . be conducted with all the formalities and strictures of a criminal case'. Mack v. Florida State Board of Dentistry, 430 F.2d 862, 864 (5th Cir. 1970), cert. denied, 401 U.S. 954 (1971). Rather, the determination of a procedural due process violation in administrative proceedings requires consideration of whether substantial prejudice has occurred. Arthur Murray Studio v. F.T.C., 458 F.2d 622, 624 (5th Cir. 1972). From a review of the record in this case, we find that D & R suffered no substantial prejudice.
 
 
 20
 In his dissenting opinion in this action, Commissioner Lastowka noted the following:
 
 
 21
 First, D & R was named by Jones in his initial complaint of discrimination filed with MSHA 15 days after his asserted illegal discharge. Thus, D & R had prompt notice of Jones' claim against it and cannot assert prejudice based on surprise or faded witness memories. Second, although the complaint filed with the Commission initially named only Mingo Coal Company as respondent, Jones promptly moved to add D & R as a respondent following the filing of Mingo's answer asserting that D & R, not Mingo, was his employer. Third, D & R was offered a hearing once the judge realized that his denial of joinder at the hearing in part had been based on his own obvious computational error in determining a pertinent time period. D & R refused a hearing, however, choosing instead to rely on procedural objections to its 'late joinder'. [Fourth], the rampant confusion evident in this record over the nature of Jones' employment relationship with D & R and Mingo is attributable in large part to the less than clear 'partnership' arrangement used in this case, and apparently commonly used in Kentucky, primarily as a device to avoid obligations under workers' compensation and other programs. Tr. 152-156, 199-206. See also BNA, Mine Safety and Health Reporter, February 5, 1986, at 342. (State of Kentucky to take corrective action addressing use of mining partnership agreements, which are described as 'a significant problem area in need of attention', due to widespread confusion over ownership responsibilities). [Fifth], as a result of the partnership arrangement, through which Roger Daniel as sole owner of Mingo contracted with D & R, comprised of Ronald Perkins as foreman/partner and Jones and several other miners as additional partners, all of the principals with knowledge of the circumstances surrounding the disputed discharge who testified at the proceedings involving Mingo are the same individuals who would have testified in the proceeding against D & R. Therefore, the witnesses were known to D & R and readily available at the time of its joinder. Reopening the hearing to permit their further testimony and cross-examination and for the introduction of additional evidence does not contravene due process. Little Sandy Coal Sales, 7 FMSHRC 313 (March 1985).
 
 
 22
 In light of the above, I conclude that the showing of substantial prejudice necessary to sustain a procedural due process objection has not been established in this record. By refusing the judge's offer to reconvene the hearing, D & R deprived itself of the very opportunity to defend against the merits of Jones' complaint that it now protests it has been unfairly denied.
 
 
 23
 Joint Appendix at 17.
 
 
 24
 We adhere to Commissioner Lastowka's dissenting opinion, and find that no substantial prejudice was experienced by D & R. Also, with regard to the ALJ's authority to reopen the hearing, we find that Fed. R. Civ. P. 21[1] provides support for the judge's action. Thus, as Commissioner Lastowka correctly noted, pursuant to this rule, 'the judge possessed the authority to rejoin D & R and his offer to reconvene the hearing to allow it to present its case is a just term for permitting the joinder'. Joint Appendix at 18 (Footnote omitted).
 
 
 25
 Accordingly, for the reasons set forth above, we REVERSE the judgment of the Federal Mine Safety and Health Review Commission and reinstate the decision of ALJ Melick.
 
 
 
 *
 Honorable Julia S. Gibbons, United States District Court for the Western District of Tennessee, sitting by designation
 
 
 [1]
 Fed. R. Civ. P. 21 provides:
 Misjoinder of parties is not grounds for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or on its own initiative at any stage of the action and on such terms as are just.