In re Inquiry Concerning Arthur Lyle ROBSON, District Court Judge.

No. 1552.

Supreme Court of Alaska.

Aug. 25, 1972.

658

Patrick E. Murphy, Fairbanks, for petitioner.

James N. Wanamaker, Wanamaker, Dickson & Perry, Anchorage, for Comm. on Judicial Qualif.

Before BONEY, C. J., and RABINOWITZ, CONNOR and ERWIN, JJ.

## OPINION

RABINOWITZ, Justice.

In 1968, the Constitution of the State of Alaska was amended [1] to establish a Commission on Judicial Qualifications. This constitutional revision provided in part:

> In addition to being subject to impeachment under section 12 of this article, a justice or judge may be disqualified from acting as such and may be suspended, removed from office, retired, or censured by the supreme court upon recommendation of the commission.[2]

The same amendment to Alaska's constitution stipulated that the legislature was to establish the powers and duties of the Commission on Judicial Qualifications, as well as the bases for judicial disqualification.[3] Acting pursuant to this mandate, the legislature provided, in part, that on recommendation of the Commission on Judicial Qualifications the supreme court may

> censure or remove a judge for action occurring not more than six years before the commencement of his current term which constitutes wilful misconduct in the office, wilful and persistent failure to perform his duties, habitual intemperance, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute.[4]

After investigation, complaint, and hearing, the Commission on Judicial Qualifications recommended that this court censure the petitioning judge for "conduct

1. This amendment is based on the revised judicial article of the California constitution. Cal.Const. art. 6, § 18 (1966).

2. Alaska Const. art. IV, § 10. This revision also provides that the commission shall consist of nine members, as follows: one justice of the supreme court, elected by the justices of the supreme court; three judges of the superior court, elected by the judges of the superior court; one judge of the district court, elected by the judges of the district court; two members who have practiced law in this state for ten years, appointed by the governing body of the organized bar; and two persons who are not judges, retired judges, or members of the state bar, appointed by the governor and subject to confirmation by a majority of the members of the legislature in joint session.

3. *Id.* Alaska Const. art. III, § 11, states, "As used in this constitution, the terms 'by law' and 'by the legislature,' or variations of these terms, are used interchangeably when related to law-making powers."

4. AS 22.30.070(c) (2).

prejudicial to the administration of justice and which has brought his judicial office into disrepute." The commission further recommended that "the censure be by way of a non-public reprimand inasmuch as it is felt that this will carry out the objectives creating the Commission on Judicial Qualifications."

The petitioning judge in the case at bar does not question any of the commission's findings of fact, or object to any of the evidence admitted in the proceeding, or to the commission's censure recommendation. Petitioner admits that he was not prejudiced by any of the pre-hearing irregularities he is calling attention to in his petition. Rather, petitioner claims to be bringing his petition in order to establish what the proper procedures should be for proceedings before the judicial qualifications commission.

■ The case is the first to reach us arising under the 1968 amendment to article IV, section 10 of the Alaska Constitution and legislation enacted in implementation thereof. In light of this fact, we consider this an appropriate occasion to comment upon several facets of proceedings before the Commission on Judicial Qualifications which have not been alluded to in the parties' briefs. Regarding the scope of review which this court should exercise in reviewing findings of fact of the commission, we see no reason to depart from the substantial evidence test which we have heretofore employed in reviewing

matters coming to this court from administrative agencies and other governmental bodies.[5]

■ Applying the substantial evidence test to the commission's findings of fact pertaining to the eight counts brought against petitioner, we conclude that the commission's findings are supported by substantial evidence in light of the whole record. As to five of the counts, the commission found that petitioner's conduct was "unjudicial," reflected "extremely poor judgment, not meeting the standards of a judicial officer," and was "obstructive to the administration of justice." The commissioner further noted that petitioner had acknowledged the making of an inappropriate comment while presiding over a court matter, and that in regard to another count, the petitioner acknowledged he "became too involved in the . . . case . . . to the point where he appeared to be a partisan" on behalf of one of the litigants.[6]

■ Concerning the subject of sanctions article IV, section 10 of the Alaska Constitution, and AS 22.30.070(c) (2), provide that upon recommendation of the commission the Supreme Court of Alaska may suspend, remove, retire or censure a judge. Under this discretionary grant, our review of a particular recommendation by the commission is necessarily broader than the substantial evidence criterion adopted for review of findings of fact made by the commission. Normally considerable weight will be accorded to a

5. Recently we had occasion to adopt the substantial evidence standard for review of findings of fact in regard to appeals from the Board of Governors of the Alaska Bar Asssociation in admission matters. In so doing, we said in part:

> In order to prevent dislocations of the respective functions of administrative agencies and the courts, we have consistently adhered to the substantial evidence test as the appropriate scope of review with regard to appeals from administrative agencies.

In re Arthur Peterson, 499 P.2d 304, 306 (Alaska, July 17, 1972) (footnotes omitted). In support of the text we cited Anderson v. Employer's Liab. Assurance Corp., 498 P.2d 288 nn. 2 & 3 (Alaska,

June 19, 1972); Pan American Petroleum Corp. v. Shell Oil Co., 455 P.2d 12, 21 & n. 38 (Alaska 1969); Keiner v. City of Anchorage, 378 P.2d 406, 411 (Alaska 1963).

6. As to Count VII, the commission found that there was no merit to this count and therefore made no findings of fact. No findings of fact were made as to Count VIII because the commission dismissed Count VIII "as being a conclusionary pleading and invading the province of the Commission." Concerning Count III, the commission found that the "facts do not indicate any impropriety" by petitioner. The commission's Findings of Fact, Conclusions of Law and Recommendation are made part of this opinion as an appendix.

given recommendation from the commission, if supported by an adequate factual basis. Nevertheless, both article IV, section 10 of the constitution and AS 22.30.-070(c) (2) clearly establish that the Supreme Court of Alaska is to exercise its independent judgment in determining an appropriate sanction, if any, as to any recommendation made by the commission. It would be tantamount to an abdication of our constitutional and statutory obligations if we were to automatically adopt the commission's sanction recommendations. In every case of this character we must insure that procedural due process has been accorded the judicial officer proceeded against and that requisite findings of fact have been made and are supported by substantial evidence. We are further obligated to decide whether the commission's recommended sanction is justified by the record and is in accord with the objectives of the commission as reflected in the relevant constitutional and statutory provisions.

We hold that the commission's censure recommendation should be adopted in view of the evidentiary bases for the five counts as to which the commission concluded that "respondent's conduct has been prejudicial to the administration of justice and has brought the judicial office into disrepute." Weighing the conduct involved against the relative judicial inexperience of petitioner at the time, we have concluded that imposition of a more serious sanction would be inappropriate. Petitioner's conduct proved under the five counts in question falls short of the standards of conduct required of justices and judges in the State of Alaska under the Canons of Judicial Ethics of the American Bar Association.[7] On the other hand, we think adoption of that portion of the commission's censure recommendation which suggests that such censure be by way of a non-public reprimand is not warranted. Here the actions of the petitioner were serious enough infractions to justify following the commission's censure recommendation. Given the neces-

7. In adopting our Canons of Judicial Ethics, we said:

> The Canons of Judicial Ethics of the American Bar Association shall be the standard of conduct of justices and judges in the State of Alaska.

Canon 4 of the Canons of Judicial Ethics requires:

> A judge's official conduct should be free from impropriety and the appearance of impropriety; he should avoid infractions of law; and his personal behavior, not only upon the bench and in the performance of judicial duties, but also in his everyday life, should be beyond reproach.

Canon 34 states:

> In every particular his conduct should be above reproach. He should be conscientious, studious, thorough, courteous, patient, punctual, just, impartial, fearless of public clamor, regardless of public praise, and indifferent to private political or partisan influences; he should administer justice according to law, and deal with his appointments as a public trust; he should not allow other affairs or his private interests to interfere with the prompt and proper performance of his judicial duties, nor should he administer the office for the purpose of advancing his personal ambitions or increasing his popularity.

*Compare* Canons 1 and 2A(1) and (2) of the Canons of Judicial Ethics of the American Bar Association Special Committee on Standards of Judicial Conduct (May 1971) Tentative Draft. Canon 1 of the draft provides:

> A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of judicial conduct so that the integrity and independence of the judiciary may be preserved.

Canon 2A(1) and (2) read as follows:

> Adjudicative Responsibilities. A judge should be faithful to the law, and maintain his professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism. He should also:
>
> (1) Be patient, dignified, and courteous toward litigants, jurors, witnesses, lawyers, and others who appear before him, and require like conduct by his staff, court officials, and lawyers.
>
> (2) Maintain order and decorum in proceedings before him.

*Compare* also the standards articulated in the ABA's Standards for Criminal Justice—The Function of the Trial Judge, Tentative Draft (June 1972) Standards 1.2, 1.3, 1.5, and 6.4.

sity for the creation of a Commission on Judicial Qualifications and the need for enforcement of standards of judicial conduct and canons of judicial ethics, we think that these ends are more fully served by making of record this court's sanction decision. By making our sanction part of the public record, we believe that the public's confidence will be maintained, both in the workings of the commission and in the ability of the judicial branch of government to insure its continued integrity.[8] We thus conclude that the censure in the case at bar should be made a matter of record in these proceedings.[9]

■ Inherent in the foregoing is our conclusion that there is no merit in petitioner's contentions that he was denied procedural due process because the commission allegedly operated without procedural rules, or alternatively, if such rules existed, because the commission ignored

them, particularly with respect to notice and complaints.[10] The record here leads to the conclusion that absent any action on the commission's part revoking or amending their promulgated rules, the rules remain in effect.[11] Further, petitioner has failed to show that he was prejudiced in any manner because of the purported procedural irregularities on the commission's part. This factor, together with our study of the record of the proceedings, leaves us with the belief that petitioner was accorded procedural due process.[12] Here petitioner had adequate notice of the changes against him and a reasonable opportunity to be heard in his own defense.

■■ One additional aspect of this petition remains for decision. Petitioner has requested an award of attorney's fees arguing that as a matter of policy adversary presentations before the commission should be encouraged, and that after having "sub-

8. In Part IX pertaining to procedures regarding judicial misfeasance, nonfeasance and disability, Standard 9.1 of the American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge (Tentative Draft, June 1972), provides:

Procedures for disciplining judges.

(a) Each jurisdiction should establish an independent commission, composed of lay citizens, lawyers and judges, to investigate complaints of judicial misconduct or incompetence against judges in all courts of the jurisdiction. The commission should be empowered to investigate any such complaint received by it, to employ the subpoena power, appoint hearing officers to examine complaints and receive evidence, and to make findings and recommendations to the highest court in the jurisdiction. Such court should be empowered to remove any judge found by it and the commission to be guilty of gross misconduct or incompetence in the performance of his duties. Provision for censure or suspension should be made for less serious misconduct. In order to protect the participants, provision should be made for keeping all complaints and commission proceedings confidential unless the commission recommends discipline by the highest court, at which time the

commission's record, upon being filed with the court, should become public.

(b) The trial judge should cooperate with such a commission in upholding and enforcing standards of judicial conduct and canons of judicial ethics.

9. Supreme Ct.R. 43A(e) provides in regard to petitions to the Supreme Court of Alaska to modify or reject a recommendation of the judicial qualifications commission for censure, removal, or retirement, "The records of all proceedings in the supreme court shall be confidential until such time as a final order is issued by the court." Compare Standard 9.1 ABA Standards Relating to the Function of the Trial Judge (Tentative Draft, June 1972) at n. 8, supra.

10. AS 22.30.060 provides:

The commission shall make rules implementing this chapter and providing for confidentiality of proceedings.

11. This argument of petitioner's is based on a communication which the petitioner received that stated in part that the commission's rules were "effective September 8, 1969 until the next annual meeting January 12, 1970."

12. Cf. Fenner v. Bassett, 412 P.2d 318, 323 (Alaska 1966); see In re Kelly, 238 So.2d 565, 571 (Fla.1970); Levinson v. Mooney, 128 N.J.L. 569, 27 A.2d 9 (1942).

stantially prevailed" he should be entitled to attorney's fees. The statutory scheme implementing the constitutional provision mandating a Commission on Judicial Qualifications does not directly provide for attorney's fees.[13] Arguably attorney's fees might be treated as an expense "reasonably necessary for effectuating the purpose of [the judicial qualifications section of the Alaska Constitution]."[14] We agree with petitioner to the extent that in order to effectuate his right of counsel and not to be forced to appear as his own attorney, a judge prevailing in such proceeding may, in the discretion of the commission, be allowed reasonable attorney's fees. However, in the case at bar we do not believe that petitioner meets the requirements of a prevailing party.[15] Therefore, an award of attorney's fees would be improper.

The recommendation of the Commission on Judicial Qualifications is accepted in part and rejected in part. We therefore conclude that Judge Arthur Lyle Robson should be censured for conduct prejudicial to the administration of justice which conduct has brought his judicial office into disrepute.[16]

BOOCHEVER, J., not participating.

## APPENDIX

### BEFORE THE COMMISSION ON JUDICIAL QUALIFICATIONS

Inquiry Concerning a Judge. }

NO. 70-1

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

The Commission on Judicial Qualifications convened at 10:00 o'clock A.M., in Superior Courtroom C of the Superior Court, 604 Barnette Street, Fairbanks, Alaska, on June 14, 1971.

The following members of the Commission were present, constituting a quorum of the Commission:

1. Ralph E. Moody, Superior Court Judge

2. C. J. Occhipinti, Superior Court Judge

3. Bruce Monroe, District Court Judge

4. Doctor E. I. Baggen, Public Member

5. Seaborn J. Buckalew, Attorney Member

Judge Ralph E. Moody convened the meeting of the Commission and ordered filed as a part of the record (Exhibit O) in this case, the letter of May 28, 1971, signed by Chairman James M. Fitzgerald, appointing Judge Moody as presiding member of this session. Mr. Patrick E. Murphy, counsel for Respondent, acknowledged that a copy thereof was received by him on June 9, 1971.

Also present at the proceedings were the Respondent Judge, Arthur Lyle Robson, and his counsel, Patrick E. Murphy. James N. Wanamaker was present as attorney for the Commission.

Mr. Wanamaker presented to the Commission a Stipulation dated June 9, 1971, on the subject of notice of the proceedings, and such Stipulation was approved by the presiding member and ordered filed as a part of the record in these proceedings. (Exhibit P)

Evidence was presented to and heard by the Commission; certain Stipulations as to evidence and as to findings of fact were presented to the Commission and approved, and the Commission being fully

---

13. AS 22.30.010–.080.

14. AS 22.30.020.

15. DeWitt v. Liberty Leasing Co., Opinion No. 818, 4–5, 499 P.2d 599 (Alaska, July 28, 1972) ; Owen Jones & Sons, Inc. v.

C. R. Lewis Co., 497 P.2d 312 (Alaska 1972).

16. The censurable conduct of petitioner did not involve willful and persistent failure to perform his judicial duties or any moral wrongdoing, violation of the law or habitual intemperance on his part.

advised in the premises makes its Findings of Fact, Conclusions of Law and Recommendation as set forth herein.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT—COUNT I

1. That on May 24, 1969, the drivers license of Garith Evart Clark was suspended pursuant to notice from the Department of Public Safety dated May 22, 1969. The ground for suspension was failure to establish financial responsibility for an accident which occurred on January 20, 1969.

2. That the other party involved in the accident of January 20, 1969, was one Lydia R. Lockerman.

3. That on October 23, 1969, complaint was brought in the District Court for the Fourth Judicial District at Fairbanks, Alaska, charging Garith Evart Clark with operating a motor vehicle while his operator's license was suspended, and alleging that such violation took place on October 18, 1969.

4. That on the date of October 18, 1969, the operator's license of Garith Evart Clark was in fact suspended by the Department of Public Safety of the State of Alaska.

5. That on December 12, 1969, said Clark appeared for arraignment before the respondent judge as the judge of the District Court, and entered a plea of "no contest" (nolo contendere) to the charge, and time for sentencing of Clark was set for January 7, 1970.

6. That on January 5, 1970, the sentencing hearing was continued to January 14, 1970.

7. That on January 13, 1970, the respondent judge entered an order suspending imposition of sentence for 30 days on condition that "Defendant is to continue to work or straighten out accident".

8. That on February 13, 1970, respondent judge caused to be executed a Form ST–11–D.L. indicating that the defendant Clark's license was limited for 30 days to the extent that "defendant is not to drive motorcycles" (Exhibit A–I–13 and Exhibit A–II–10.)

9. That the respondent judge wrote to Commissioner of Public Safety, Mel J. Personett, that letter dated February 11, 1970, which is shown in Exhibit A–I–13 and A–II–7 and that said letter was in fact mailed and in fact received by Commissioner Personett.

10. That by his admission in his answer to the complaint, the respondent judge undertook the following matters on behalf of the defendant Clark:

a. Attempts to contact Lydia Lockerman to secure on behalf of defendant Clark, a civil release of damages.

b. Contacts or correspondence with the defendant's insurance company concerning alleged mistakes in insurance coverage.

c. Contacts on behalf of defendant Clark with State Farm Insurance Company, the insurer of Lydia Lockerman to verify whether suit would be brought.

11. That on February 13, 1970, the respondent judge entered an order setting aside the conviction of defendant Clark, entitled "Order Setting Aside Conviction and Certificate", Exhibit A–II–3.

12. That on the same date, February 13, 1970, respondent judge entered an "Order of Closure and Discharge" which is represented as Exhibit A–II–2.

13. That respondent judge knew at the time of the execution of the ST–11–D.L. form and at the time of his letter of February 11, 1970, that the execution of the ST–11–D.L. form had the effect of giving to defendant Clark a document which would be honored by an examining police officer in lieu of a driver's license for the 30 day period specified.

14. That at the time of the issuance of the ST–11–D.L., the respondent judge knew that the driver's license of defendant Clark was then suspended by the Department of Public Safety.

15. That the actions summarized in Finding of Fact No. 10 were not appropriate actions of a judge sitting on a case pending before him, in that they gave an impression approximately equivalent to that of attorney representation of Clark by the respondent judge, at the same time as the case was pending before him.

16. That the respondent judge so intertwined the roles of advocate for Clark and judge of Clark's case as to call into question the impartiality of the respondent as a judge of the District Court.

17. The respondent's conduct therein is found by the Commission to be unjudicial.

### FINDINGS OF FACT—COUNT II

The Commission makes the following findings of fact with respect to Count II of the Complaint:

1. That on June 28, 1970, one Oliver Lemon was a prisoner in the Fairbanks State Jail pursuant to a lawful judgment and commitment.

2. That late in the day of June 28, 1970, said Oliver Lemon did escape from the Fairbanks State Jail.

3. That at about the hour of 7:30 P.M. on June 29, 1970, said Oliver Lemon did contact the respondent judge by telephone requesting an interview with the respondent judge.

4. That such a meeting was agreed to by respondent.

5. That at approximately 8 o'clock P.M. on June 29, 1970, said Oliver Lemon arrived at the home of respondent.

6. That said Oliver Lemon outlined to respondent three principal concerns which were as follows:

(1) Concerning a "defrauding an innkeeper" case which he wished to have either dismissed or brought to trial.

(2) That he did not wish to serve time for his escape.

(3) That he wished to obtain prompt trial of a charge in United States District Court concerning an armory burglary.

7. That respondent called Dick Madson of the office of Public Defender at Fairbanks and outlined to Madson the three principal concerns of Lemon as summarized in the preceding paragraph. In this telephone call, only respondent talked to Madson and although Oliver Lemon was present, he did not speak to Madson.

8. That Public Defender Madson called to respondent and relayed to respondent his understanding of the State's position concerning the inn-keeper case and the matter of the current escape.

9. That during this telephone call from Madson to respondent, the respondent advised Lemon of the terms of the discussion with Madson and Lemon stated to him that this would be agreeable. Respondent then advised the Public Defender Madson that he would arrange Lemon's return.

10. At approximately 10:04 P.M., respondent called the Alaska State Jail in Fairbanks and advised that he was en route with Oliver Lemon.

11. That respondent embarked with Lemon for the State Jail but that routing was diverted to the home of Dick Madson, Public Defender.

12. That at Madson's home yet another phone call was placed to the District Attorney and further discussion ensued concerning the surrender of Lemon.

13. That Lemon at this point indicated a reluctance to surrender himself and thereafter left the Madson home.

14. That the respondent contacted the State Police by telephone at approximately 11:42 P.M. and advised the Alaska State Police that Lemon had escaped from the residence of Public Defender Madson.

15. That police cars of the Fairbanks Police Department responded to the scene of the Madson house and said units were on the scene within ten minutes of the telephone notice.

16. That respondent departed the scene of the Madson house within approximately five minutes after the call to the State Police, and in any event within nine minutes of said telephone call.

17. With respect to the conversations on Lemon's behalf with the Public Defender Madson, it is the finding of the Commission that these conversations could have been interpreted as in the nature of representation or partisan effort by respondent on behalf of said Lemon.

18. That while an attorney in the private practice of law, respondent had represented Oliver Lemon in the period between September 27, 1968 and January 24, 1969, in Case No. F–34–68CR, in the United States District Court for the District of Alaska. (Exhibits B–I–1, 2 and 3)

19. The Commission finds the respondent demonstrated extremely poor judgment, not meeting the standards of a judicial officer.

## FINDINGS OF FACT—COUNT III

For its findings of fact as to Count III of the Complaint, the Commission finds as follows:

1. That during the month of April, 1969, and at some point in time prior to April 29, 1969, the respondent judge did encounter in the court building at Fairbanks one David Pagett, a/k/a Frederick David Pagett, and the following conversation ensued in approximately the following words:

PAGETT: "What is the usual fine for aiding curfew violation?"

ROBSON: "Generally very slight, either a slight fine or suspended sentence."

2. That on April 22, 1969, complaint was brought in the District Court at Fairbanks charging said Pagett with "Aiding Curfew Violation" in violation of Section 6.701(D) of the Fairbanks Code of Ordinances; and alleging that the offense took place on April 17, 1969. (Exhibit C–II–1)

3. That on April 29, 1969, said Pagett appeared before the respondent judge without counsel and entered a plea of guilty to the said charge of aiding curfew violation and was sentenced by respondent judge to a sentence of 60 days, 40 days suspended. (Exhibit C–II–2)

4. That said Pagett subsequently appeared before respondent with counsel on May 9, 1969, and made a motion to withdraw his plea of guilty and to set aside and vacate the sentence on the basis that he had relied on the earlier advice of the respondent judge in entering his plea of guilty.

5. That pursuant to the hearing of May 9, 1969, the guilty plea of defendant Pagett was withdrawn and the sentence was vacated.

6. Thereafter on May 21, 1969, the case of defendant Pagett was tried before another judge of the District Court at Fairbanks.

7. The Commission finds that the facts do not indicate any impropriety by the respondent.

## FINDINGS OF FACT—COUNT IV

Because of the many separate items alleged in Count IV, the findings as to this Count are variously grouped and identified.

*Parts 1, 2 and 3 (Neimi, Tolles, Fosdick)*

1. In each of the cases Fosdick, Tolles and Neimi the charge was negligent driving.

2. That during the applicable time in 1969 there was in existence a special practice of the District Court at Fairbanks which required that charges of negligent driving, reckless driving and operating a motor vehicle while under the influence of alcohol would have to be brought *on a typed complaint as opposed to a uniform traffic citation.*

3. It is a finding of the Commission that this requirement of a typed complaint often resulted in the following situation during the fall of 1969:

a. Trooper gives ticket for negligent driving and sets court appearance date on the ticket.

b. Since the court will not accept the charge of negligent driving on the traffic ticket, a formal complaint is required.

c. There is delay in preparation of the formal complaint in the District Attorney's Office and the defendant appears in court on the date set on the

traffic citation prior to filing of a complaint.

4. The Commission finds that the factors listed in the immediately preceding paragraph were all common to the cases of Neimi, Tolles and Fosdick.

5. In the case of Neimi matters may be summarized as follows:

a. Neimi appeared in court on August 7, 1969 as specified in his traffic citation.

b. There was no complaint on file with the court.

c. A court file was opened utilizing the defendant's copy of the traffic citation and the case was given court number 69–1941.

d. The case was dismissed on the basis that no complaint had been filed.

e. Thereafter an Information signed by an Assistant District Attorney was filed on August 21, 1969 and a Summons was issued.

f. On August 26, 1969, the defendant appeared before the court and was given a $1.00 fine.

6. The case of Fosdick involved exactly identical procedure to that found in the Neimi case.

7. As to the Tolles case, it may be summarized as follows:

a. Tolles appeared before the court on July 24, 1969, in response to the date set on his traffic citation.

b. A court file was opened utilizing the defendant's copy of the traffic citation, and opened under the number of 69–1780.

c. The defendant Tolles pleaded guilty and testified as to extenuating circumstances and was fined $1.00.

d. Thereafter on August 21, 1969 an Information charging Tolles with the same offense and signed by an Assistant District Attorney was filed with the court and Summons issued.

e. On August 25, 1969 Tolles appeared before the court and the respondent

judge, noting the prior $1.00 fine at the earlier appearance, entered a dismissal of this Case No. 69–2183 on the ground "That the defendant has heretofore entered a guilty plea and paid the fine."

8. With respect to the Tolles matter, page 20 of the transcript which is Exhibit D–7, the respondent acknowledges his statements set forth in lines 20 through 24; and acknowledges that his comment on the actions of the District Attorney's Office as "some sort of stupidity" was not a proper judicial comment.

9. The respondent's conduct is found to be obstructive to the administration of justice.

*Part 4—Thronson*

1. That the transcript is a true and correct transcript of proceedings in Case No. F69–3115 and respondent acknowledges that his comments therein are correctly transcribed. Statements of respondent which might be thought objectional are as follows:

a. " . . . you got a ticket made out by an officer who didn't know the address of the court, which is a bad start." (p. 2, lines 3–5) •

2. The respondent judge acknowledges the making of this comment and acknowledges that it is not an appropriate comment to have been made by him while sitting as a judge of the District Court.

*Parts 5 through 12—Arraignments of December 6, 1969*

1. That certain court transcript which has been marked Exhibit D–6 has been acknowledged by respondent as a true and correct transcription of the court proceedings of December 6, 1969.

2. Also the Commission has actually listened to the court's tape 4M576, Log No. 0646 to 0750.8 in order to better understand the correct nature of the proceedings.

3. As to the arraignments of December 6, 1969, the Commission finds the following factors:

a. That December 6, 1969 was a Saturday.

b. The transcript of the December 6, 1969 proceedings does not reflect the presence of any lawyer on behalf of either the City of Fairbanks or the State of Alaska.

4. The Commission finds from listening to the tape that respondent gives the impression he has a cavalier attitude toward court proceedings, conveying the impression that most of the matters were unimportant and frivolous, all of which detracts from the dignity of judicial proceedings.

5. The respondent's conduct is found to be obstructive to the administration of justice.

## FINDINGS OF FACT—COUNT V

For its findings of fact as to Count V of the Complaint, the Commission finds as follows:

1. Respondent has admitted to writing and mailing the letter of August 27, 1969, to Robert W. Ward which was Exhibit A to Count V of the Complaint and which has been made Exhibit F in this proceeding.

2. Respondent acknowledges having written and mailed that letter of October 8, 1969, to G. Kent Edwards, then Attorney General of the State which was Exhibit B to Count V of the Complaint and which is Exhibit G in this proceeding.

3. Defendant acknowledges having written that letter of September 15, 1969, addressed to Bixler Whiting which was Exhibit C to Count V of the Complaint and which is Exhibit H in this proceeding.

4. The Commission finds as circumstances concerning Count V of the Complaint the following factors:

a. That a fugitive from justice complaint was filed against Skura on January 6, 1969; and Skura was arraigned before the court on January 8, 1969.

b. That the defendant Skura was not arraigned on the Governor's Warrant of Arrest in Extradition until April 22, 1969.

5. Respondent acknowledges that these three letters correctly reflect that he became too involved in the Skura case to the point where he appeared to be a partisan on behalf of Skura, and which might cause his impartiality as a judge of the District Court to be questioned, and the Commission finds these actions display extremely poor judgment and conduct unbecoming a judicial officer.

## FINDINGS OF FACT—COUNT VI

With respect to Count VI the Commission finds facts as follows:

1. That during 1969 Labor Day fell on September 1, and that thus the holiday commonly referred to as the "Labor Day weekend" occurred on the dates of August 30th, 31st and September 1st.

2. Defendant admits having written and posted to Fairbanks Police Chief, Stanley Zaverl, and to Fairbanks District Attorney, Gerald Van Hoomissen, that certain Memorandum dated September 8, 1969, which was Exhibit A to Count VI of the Complaint and which is Exhibit I in these proceedings.

3. Respondent acknowledges that this Memorandum of September 8, 1969, was initiated without sufficient investigation, it being the case that the matter of double charges under city and state law occurred only during the Labor Day weekend of 1969 and upon further investigation it appeared this was due solely to secretarial error or an error of instructions to secretaries.

4. The Commission finds this action demonstrates a lack of judicial temperament.

## COUNT VII

The Commission finds that there is no merit to this Count of the Complaint and makes no findings of fact.

## COUNT VIII

The Commission dismisses Count VIII of the Complaint as being a conclusionary

pleading and invading the province of the Commission.

## CONCLUSIONS OF LAW

The Commission concludes that based on the stipulated facts and the weight given hereto in Counts I, II, IV, V and VI of the Complaint that the total effect of the respondent's conduct has been prejudicial to the administration of justice and has brought the judicial office into disrepute.

## RECOMMENDATION

It is recommended by the Commission that the Supreme Court censure Judge Arthur Lyle Robson for conduct prejudicial to the administration of justice and which has brought his judicial office into disrepute.

It is further recommended that the censure be by way of a non-public reprimand inasmuch as it is felt that this will carry out the objectives creating the Commission on Judicial Qualifications.

## CERTIFICATION OF COMMISSION ACTION

These Findings of Fact, Conclusions of Law and Recommendation as to discipline have been concurred in by five members of the Commission who have considered the record in these proceedings.

DATED this 15 day of June, 1971.

(s) Ralph E. Moody
Ralph E. Moody
Presiding Member