**In the Matter of HEARINGS BY THE COMMITTEE ON BANKING AND CURRENCY OF THE UNITED STATES SENATE.**

**Edward A. HINTZ, Petitioner-Appellant.**

**No. 11943.**

United States Court of Appeals Seventh Circuit.

June 28, 1957.

John M. Leonard, Jr., Chicago, Ill., Ednyfed H. Williams, Chicago, Ill., Leonard D. Rutstein, Highland Park, Ill., of counsel, for petitioner-appellant.

Matthew Hale, Washington, D. C., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

Acting under a committee resolution[1] adopted July 27, 1956, the Senate Committee on Banking and Currency held hearings on the Illinois banking situation,[2] at the United States Court House in Chicago, beginning on October 8, 1956. Endeavoring to obtain testimony from Edward A. Hintz, then and now, incarcerated in the Illinois State Penitentiary at Stateville, Joliet, Senator J. W. Fulbright, the Committee Chairman, petitioned October 4, 1956, through counsel, for issuance of a writ of habeas corpus *ad testificandum* to Joseph E. Ragen, Warden of the Illinois Penitentiary to bring Hintz, and other prisoners,[3] before the Committee for *giving testimony at its hearings*. Sometime before filing that petition, Senator Fulbright wrote Governor Stratton of Illinois requesting him to arrange for the questioning of Hintz by the Senate Committee when it convened in Chicago. Responding by wire September 29, 1956, the Governor stated, in part, " * * * will be happy to cooperate and have issued permission for appearances in Chicago." An order was entered by the district judge on October 4, 1956 instructing the Clerk of Court to issue

---

1. The wording of this resolution is omitted from the record.

2. Hearings before Committee on Banking and Currency on the Illinois Banking Situation, 84th Cong., 2nd Sess., Parts 1 and 2 (1956).

3. Orville E. Hodge and Edward A. Epping are the other two persons, but neither one of them is involved in the matter before us.

the requested writ of habeas corpus *ad testificandum* to Ragen as Warden "to bring * * * Edward A. Hintz * * before the Committee * * * on October 8, 1956, and every day thereafter until completion of the hearings, or until the Committee no longer requires the presence of said witnesses * * * in the offices of said Committee in the United States Court House * * * Chicago * * * as witnesses in hearings to be held by said Committee, and thereafter to be returned to the * * * penitentiary."

Hintz appeared before the Committee on October 9, 1956, having been brought to Chicago by the Warden in obedience to the writ issued under the district court's order and served on Ragen. Three days later, October 12, 1956, counsel for Hintz filed a motion to quash that writ of habeas corpus *ad testificandum* supported by briefs and subsequent oral arguments before the same district judge who had earlier taken affirmative action resulting in issuance of the writ. The appeal taken on Hintz's behalf to our court seeks review of the district court's order dated October 19, 1956, overruling the motion to quash the writ. From the Committee Counsel's verified motion to dismiss this appeal, we are informed that the Committee no longer required Hintz's presence.

Subsequently Senate Resolution 124, 85th Cong., 1st Sess. Report No. 232 (April 15, 1957) mandated certification of the Committee's report, concerning Hintz's refusal to answer the Senator's questions, to the U. S. Attorney for the Northern District of Illinois "to the end that * * * Edward A. Hintz may be proceeded against in the manner and form provided by law." During oral arguments of this present appeal both counsel conceded that the matter is currently pending in the U. S. Attorney's office in Chicago. See: Watkins v. U. S., 77 S.Ct. 1173.

Using the potential, and probably real, threat of contempt proceedings against him, Hintz insists this appeal can be used as a vehicle for testing the validity of the writ served on the Warden. Of course, Hintz was returned to the Illinois Penitentiary where he is presently serving a federal sentence concurrently with a sentence imposed upon him by an Illinois state court. Clearly the challenged writ is long since *functus officio*.

But we think there are several critical obstacles blocking our ultimate determination of questions raised by Hintz when attacking the district court's power to issue the writ. Once we limit the context within which answers on those issues are being sought it becomes clear that (1) this appeal is moot or (2) was taken from a non-final order, and (3) Hintz was neither a party litigant to the activity below and has questionable standing on appeal. We quickly add that our present view on this last item is not based upon his convict status but arises out of the fact the writ was directed to the Warden and, the problem of whether there was actually any litigation or technically a "proceeding" in the district court. However, our use of the word "moot" does not indicate we necessarily think that, at some stage, there was a justiciable controversy between Hintz and the government centering about the writ. Quite the contrary. For the writ of habeas corpus *ad testificandum* is a procedural device and not here invoked for the purposes of testing legality of detention. Since the desired witness was in a State penitentiary any subpoena directed to him would be unavailing. 8 Wigmore, Evidence § 2199 (3rd ed. 1940. The common law background of this method for obtaining court appearance and personal testimony of incarcerated prisoners was detailed in Ex parte Bollman, 1807, 4 Cranch 75, 8 U.S. 75, 2 L.Ed. 554; also see: Gibson v. United States, 8 Cir., 1931, 53 F.2d 721 for collected cases.

As a basis for decision mootness is unattractive when the case, as here, yields novel issues. But with our basic powers circumscribed by Article III of the Constitution we must pursue a diligent course aimed at averting adjudications in the absence of "a case or con-

troversy." A sound grasp of what cannot or should not be attempted by Article III courts carries implications for achieving constitutional objectives ranging above some one isolated, though intriguing, abstract legal problem. Mr. Justice Gray reduced part of the relevant legal commands to this form in California v. San Pablo, etc., Railroad, 1893, 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747:

> "The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property, which are actually controverted *in the particular case before it.* When, in determining such rights, it becomes necessary to give an opinion upon a question of law, that opinion may have weight as a precedent for future decisions. But the court is not empowered to decide moot questions or abstract propositions, or to declare, *for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it.* No stipulation of parties or counsel, whether in the case before the court or in any other case, can enlarge the power, or affect the duty, of the court in this regard." (Italics ours).

Facing up to the existence of the mooted points embedded in this appeal, on the other hand required alert deference to whatever rights might later be claimed, or legal position subsequently to be asserted, by Hintz. For that serious reason our ultimate disposition has been shaped in a fashion, we think, leaving both sides unhampered by this opinion, and with this goal uppermost in mind we refrain from intimating our views on the issues put forward by counsel for Hintz. We leave open all phases of the appeal save our grounds for refusing any decision beyond our order, and its basis, for remand with directions.

For there is insufficient play in the joints of the framework from which this appeal is pieced to do any more than just

what we order. Passing upon the denial of the motion to quash the writ could be an empty judicial gesture. The witness appeared, the writ is dead and the Committee returned home. Whatever views we expressed about the district court's power would lose vitality with the rapidity of their expression and beyond some polemical use during the impending contempt prosecution would fail in qualifying as binding precedent. In that case, if it arises, there will be ample opportunity to review the judgment and all of the questions Hintz seeks to raise here may be preserved for appeal, if the need arises. We have grave doubts that a decision striking down the dead writ, yet about which we expressly withhold our opinion, would forestall any further action against Hintz. Indeed for his protection we venture no opinion about whether the validity of the district court's order issuing the writ would be relevant on the contempt issue. See e. g. Selected Products Corporation v. Humphreys, 7 Cir., 1936, 86 F.2d 821. It is, but a short step, then, to the view that Hintz is attempting piecemeal review (28 U.S.C. § 1291) which he meets with an argument based upon the difference between a subponea *duces tecum* and the writ invoked here, since the Committee cited authorities all involving precedent established by issues involving subpoenas. For example, our early case of National Nut Co. of California v. Kelling Nut Co., 7 Cir., 1943, 134 F.2d 532 as just such an instance of an interlocutory stage.

These, then, are some salient aspects of the case under cutting the main points urged by and on behalf of Hintz, and which prevent us from deciding them in this appeal. For all we now know the contempt proceeding has not been instituted, nor the prosecution commenced, but in any event no contempt case is currently before us on review. Actually those theories espoused by counsel for Hintz embody a single one-sided idea tacitly indicating that invalidation of the writ, at this level, would remove the potential contempt prosecution. Of

course, this view overlooks (1) the possibility of a decision approving the writ, and thereby smoothing the government's path, (2) a complete absence of evidence and arguments in the current record and briefs on the issue of whether or not Hintz committed contempt, questions about the legality of the writ aside, and (3) the method by which Hintz was brought before the Committee may be irrelevant on the narrow issue of liability for contempt.

Cases cited to us by Hintz's counsel are either inapposite or distinguishable. For example, Newport News Co. v. Schauffler, 1938, 303 U.S. 54, 58 S.Ct. 466, 82 L.Ed. 646, followed Bethlehem Shipbuilding Corp. v. Meyers, 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 deciding a question in the administrative law field involving exhaustion of remedies. Indeed Mr. Justice Brandeis, who incidentally authored both opinions, observed in Newport News [303 U.S. 54, 58 S. Ct. 468]: "To the extent that relief was sought to prevent the injury resulting from a hearing, the cause appears to be moot. But the cause cannot be disposed of as moot, as the trial examiner has not yet made his report to the Board; the Board has made no decision; and thus there is a possibility of future proceedings." It must be remembered that the Newport News case arose through a declaratory judgment proceeding attacking the constitutionality of statutory provisions and jurisdiction of the National Labor Relations Board while a complaint against the employer, Newport News, was pending before the administrative agency. Public utility regulation involving reparations and rate-making take South Pacific Co. v. Interstate Commerce Commission, 1911, 219 U.S. 433, 33, S. Ct. 288, 55 L.Ed. 283 well out of the zone of relevancy here. Demonstrating the inapplicability of each authority relied upon for Hintz's argument against mootness is unnecessary. The validity of the writ might not be involved in a subsequent proceeding involving Hintz and the government.

We simply hold that this appeal pivots on a moot point, prematurely raised by a party having dubious status. For all of these reasons we reverse the order appealed and vacate the judgment entered, October 19, 1956, below denying Hintz's motion to quash the writ of habeas corpus *ad testificandum* and remand this cause to the district court with directions to dismiss Hintz's motion without prejudice. United States v. Munsingwear, 1950, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36. By thus disposing of this appeal we expressly intend to preclude any claim that the order of October 19, 1956 is *res judicata,* nothing we have said, however, should be construed beyond that stated purpose.

Reversed and remanded with directions.