**LEHIGH PORTLAND CEMENT COMPANY, Plaintiff,**

v.

**FEDERAL TRADE COMMISSION et al., Defendants.**

Civ. A. No. 4472.

United States District Court
E. D. Virginia,
at Alexandria.

Oct. 24, 1968.

Armistead L. Boothe, Alexandria, Va., for plaintiff.

James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, and Harold D. Rhynedance, Jr., Daniel H. Hanscom and Frank A. Gregory, Washington, D. C., Attys., and C. Vernon Spratley, Jr., U. S. Atty., and John D. Schmidtlein, Asst. U. S. Atty., for Federal Trade Commission.

## MEMORANDUM OPINION AND ORDER

OREN R. LEWIS, District Judge.

This action for declaratory judgment and injunctive relief was brought by Lehigh Portland Cement Company to permanently restrain the Federal Trade Commission and others from taking any further action in the adjudicative proceeding (Docket No. 8680) charging Lehigh with violation of both Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, other than dismissing it or transferring the proceeding to the Department of Justice for such further action as may be just and consistent with the rights of the parties as interpreted and adjudicated by this Court.

Jurisdiction of this Court to hear the matter is invoked under the provisions of 28 U.S.C. §§ 1337 and 1361, 5 U.S.C. § 1009, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. Venue is laid under 28 U.S.C. § 1391(e).

The case was submitted and heard on the defendant's motion to dismiss or, in the alternative, for summary judgment, and the plaintiff's cross-motion for summary judgment.

Both sides fully documented the facts by numerous exhibits, affidavits and admissions. Each agrees there are no genuine issues of material fact.

The record as here made discloses that the Federal Trade Commission in April of 1964 publicized its intention to institute an industry-wide study of vertical integration in the cement-concrete industry and formulate an industry-wide policy in the public interest as a more appropriate method of dealing with Section 7 problems in the cement industry than adjudicated proceedings against individual companies.

This announcement was implemented on December 1, 1964 by a Commission resolution directing its Bureau of Economics to institute an economy-based inquiry in the cement industry to—

obtain information concerning such matters as the structure of the cement-producing and principal cement-consuming industries, the nature of the relevant product and geographical markets, the causes and business rea-

sons underlying such acquisitions, and the probable effects of such acquisitions on competitive conditions of the market and industries involved—which may be of assistance to the Commission in discharging its responsibilities to enforce the laws, in particular Section 7 of the Clayton Act (15 U.S.C. 18), applicable to such acquisitions.

In August 1965 the Commission staff learned that Lehigh had acquired ready-mix concrete producers doing business in the Miami, Orlando and Jacksonville areas of Florida. An investigation was begun and Lehigh was mailed a notification on December 15, 1965 of the Commission's intention to issue a complaint. Lehigh was informed of the opportunity for disposing of the proposed complaint by consent settlement and was requested to advise the Commission whether or not it was interested in such manner of disposition.

Lehigh so advised the Commission on December 27, 1965. A meeting was held on January 14, 1966 to discuss a possible basis for settlement of the complaint.

In February of 1966 Lehigh filed a petition with the Commission urging the Commission, among other things, to take prompt action to institute an industry-wide inquiry into the entire matter of acquisitions of ready-mix concrete producers by cement manufacturers—for the guidance of Lehigh and others similarly situated as well as the Commission officials and staff.

Lehigh, on the same date, filed a petition with the Commission for rescission of the proposed complaint and sought to maintain the status quo of the two Florida ready-mix acquisitions pending the industry-wide action by the Commission after which Lehigh would be governed by the same ground rules as other members of the industry.

In the meantime the Commission's counsel learned, after the consent negotiations had begun, that Lehigh had also acquired a ready-mix concrete producer doing business in Louisville, Lexington and Frankfort, Kentucky, and that Lehigh had acquired a substantial ready-mix producer operating in Alexandria, Arlington and Falls Church, Virginia. Commission counsel then advised Lehigh, to wit, on March 1, 1966, that he was proposing an amended complaint to include the ready-mix acquisitions in Virginia and Kentucky.

On April 1, 1966, the Commission issued a complaint questioning the legality of Lehigh's vertical ready-mix concrete acquisitions not only in Florida but in Northern Virginia and Kentucky as well.

On April 22, 1966 the Commission announced public hearings on an industry-wide basis concerning vertical acquisitions in the cement industry—to assist the Commission in reaching a determination concerning what action, if any, it should take.

Shortly thereafter Lehigh filed with the hearing examiner a motion to vacate the Commission's complaint or to stay all proceedings. Further proceedings were stayed pending a ruling by the Commission. The Commission denied Lehigh's motion to vacate on February 6, 1967.

Thereafter Lehigh filed an application to the Commission for transfer of the administrative proceedings to the Department of Justice. This motion was denied as being wholly without merit.

On March 9, 1967 the Commission counsel moved the hearing examiner to amend the Commission's complaint, to include an additional acquisition by Lehigh, and the motion was granted. On March 20th Lehigh filed another motion to dismiss the complaint. The motion was again denied by the Commission.

This action was then commenced, to wit, on May 17, 1967. Extensive pre-trial proceedings then began.

Lehigh's complaint centers around the alleged extraordinary activities of the Federal Trade Commission during the pendency of the (Lehigh's) adjudicative proceedings, namely, that the Commission embarked upon a program which at a minimum creates the appearance that the Commission has prejudiced the case against Lehigh (1) by issuing prejudicial publicity adverse to Lehigh's position in

the adjudicative proceedings, including the participation by at least one commissioner in creating such publicity; (2) by conducting an industry-wide investigation and public hearing into the very facts at issue in the adjudicative proceedings without granting Lehigh traditional due process safeguards, such as cross-examination; (3) by receiving and listing in its public record ex parte unverified charges and comments by business competitors adverse to Lehigh's position in the adjudicative proceedings without right of cross-examination by Lehigh; and (4) by continuing the industry-wide investigation to this very day—all during the pendency of a complaint proceeding requiring a decision on the merits, based solely on record evidence.

The Commission actions and prejudicial publicity complained of included the Commission's news release of April 7, 1966 publicizing the charge that Lehigh's vertical acquisitions were in violation of the Clayton and the Federal Trade Commission Acts; the news release of April 22, 1966 re the Commission's concern over the increasing trend of vertical mergers and acquisitions in the industry; notice of public hearings on the subject of vertical acquisition integration in the cement industry, solicitation of interested persons to submit any information or comments pertinent thereto; publication of the Commission's economic report on mergers and vertical integration in the cement industry; the Commission's news release of January 19, 1967 publicizing its enforcement policy with respect to vertical mergers in the cement industry; the news release of April 20, 1967 publicizing the amended complaint against Lehigh; the comments of the chairman of the Commission made before committees of the Congress re pending cement company cases.

■ Notwithstanding the Commission's repeated assertions that this Court lacks jurisdiction over the subject matter because of the failure of Lehigh to exhaust administrative and judicial remedies provided for in Section 5 of the Federal Trade Commission Act, 15 U.S.C. §

45, and Section 11 of the Clayton Act, 15 U.S.C. § 21, this Court concludes that it has jurisdiction to hear and determine this matter under 28 U.S.C. § 1361 and 5 U.S.C. §§ 702, 706 (formerly Administrative Procedure Act § 10). See Amos Treat and Company v. SEC, 113 U.S.App.D.C. 100, 306 F.2d 260 (1962); Deering Milliken v. Johnston, 295 F.2d 856 (4th Cir. 1961); Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Gardner v. Toilet Goods Ass'n., 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).

Lehigh here seeks relief from Federal Trade Commission action allegedly depriving it of its constitutional right to a fair and impartial decision on the merits.

Briefly discussing Lehigh's complaints seriatum—

■ The Commission not only had the right but the duty to institute and conduct an industry-wide investigation re vertical acquisitions in the cement and ready-mix concrete industries. See Section 6 and other provisions of the Federal Trade Commission Act, 15 U.S.C. § 41 et seq.

The Commission is granted exclusive authority to conduct adjudicative proceedings re alleged violations of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a) (6) and (b). The Department of Justice and the Commission are both given jurisdiction to conduct adjudicative proceedings in alleged violations of Section 7 of the Clayton Act. See 15 U.S.C. § 21(a) and (b).

■ Both industry-wide investigations and adjudicative proceedings involving the same general subject matter may be instituted and conducted simultaneously. Nothing in either Act (Clayton or Federal Trade Commission) suggests the contrary. The adjudicative proceedings here complained of, however, were not heard during the time the Commission was holding public hearings in re the industry-wide investigation. The case has not yet been heard—briefs filed in this proceeding indicate that Le-

high has not as of now filed its answer to the pending complaint. All of Lehigh's efforts have been directed toward dismissal of the charges or transfer to the Department of Justice. However, had the Commission conducted its industry-wide investigation and the Lehigh adjudicative proceedings simultaneously, that alone would not require dismissal or transfer of the complaint. It is well settled that the exercise of such dual functions by an administrative agency does not constitute a deprivation of due process. See Pangburn v. Civil Aeronautics Board, 311 F.2d 349 (1st Cir. 1962) and cases cited therein. See also Holt v. Raleigh City Board of Education, 265 F.2d 95, where our Fourth Circuit held that the Board of Education can properly investigate a case involving the transfer of a Negro student from one school to another and then may adjudicate the same question.

The combination of such functions in the Federal Trade Commission has been specifically approved in several cases. See Federal Trade Commission v. Klesner, 280 U.S. 19, 50 S.Ct. 1, 74 L.Ed. 138 (1929); Federal Trade Commission v. A. McLean & Son, 84 F.2d 910 (7th Cir. 1936).

■ Lehigh's claim of right to cross-examine those who appeared before the Commission during the public hearings held in connection with the industry-wide investigation is without merit or support in law.

Lehigh next complains about what it calls prejudicial publicity issued by the Commission adverse to its position. Section 6 of the Federal Trade Commission Act empowers the Commission

"(a) To gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices, and management of any corporation engaged in commerce, excepting banks and common carriers subject to the Act to regulate commerce, and its relation to other corporations and to individuals, associations, and partnerships.

\* \* \* \* \* \*

"(f) To make public from time to time such portions of the information obtained by it hereunder, except trade secrets and names of customers, as it shall deem expedient in the public interest; and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation; and to provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use."

Pursuant to Section 6(f) of the same Act, 15 U.S.C. § 46(f), the Commission has implemented its discretionary authority "to make public" much of the information obtained by it by providing for the release of public information in Section 1.132 of its published General Procedures, 16 C.F.R. § 1.132 (Revised 1967), in part as follows:

"Information in the following classes is public, and may be obtained as indicated:

\* \* \* \* \* \*

"(e) The pleadings, transcript of testimony, exhibits and all documents received in evidence or made a part of the record in adjudicative proceedings (except evidence received in camera) \* \* \*.

\* \* \* \* \* \*

"(g) Additional information concerning the activities of the Commission is released from time to time through the Commission's Office of Information."

■ From the statutes quoted, it is clear the Commission has the authority to issue news releases pertaining to both its investigatory and adjudicatory proceedings and to make reports from time to time to the appropriate committees of the Congress. The District of Columbia Circuit Court of Appeals has so held as late as March 12th of this year. See Federal Trade Commission v. Cinderella Career and Finishing Schools, Inc., 404 F.2d 1308.

■ This Court has read the news releases complained of, and the economic report and enforcement policy of the Commission, and concludes only that the documents in question have not as a matter of law so prejudiced Lehigh as to deprive it of a fair and impartial hearing on the complaint now pending before the Federal Trade Commission. Whether the pre-trial publicity or other administrative practices complained of have or will so prejudice Lehigh can only be determined upon the conclusion of the hearing in question.

Upon the present posture of the proceedings Lehigh has failed to satisfy this Court that it has been deprived of any of its constitutional rights in the premises or that it has or will suffer such irreparable injury in defending the charges pending against it in Federal Trade Commission Complaint Docket No. 8680 as to justify invoking the equity powers of this Court. Therefore the defendant's motion for summary judgment should be granted, and

It is so ordered.

The plaintiff's cross-motion for summary judgment is denied, and

This suit is dismissed at the costs of the plaintiff.